UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Joseph A. Carter )
                    Plaintiff )
                                        )
            vs.                         )        Case No. _____
Wexford Health Services, Warden )
Kimberly Smith, Dr. Abdur Nawoor )
Dr.            Cathy Craig              )
Kathy Galvin, Pat Smith, Randy )
Emerson, Other un-named nurses )
at Taylorville C.C. )
                    Defendant(s) )

## COMPLAINT

☑ 42 U.S.C. §1983 (suit against state officials for constitutional violations)

☐ 28 U.S.C. § 1331 (suit against federal officials for constitutional violations)

☑ Other Eighth Amendment

*Please note:* This form has been created for prisoners but can be adapted for use by non-prisoners.

Now comes the plaintiff, Joseph A. Carter , and states as follows:

My current address is: P.O. Box 1000 , Taylorville, IL 62568

The defendant Wexford Health Services , is employed as Healthcare provider at Taylorville Correctional Center

The defendant Kimberly Smith , is employed as Warden at Taylorville C.C.

The defendant Abdur Nawoor , is employed as Physician at Taylorville C.C.

The defendant Dr. Ritz , is employed as Physician at Wexford

(revised 9/96)

The defendant Kathy Galvin , is employed as Healthcare Administrator at Taylorville C.C.

Additional defendants and addresses Pat Smith, Cathy Craig, Randy Emerson, additional un-named nurses at Taylorville Correctional Center.

For additional plaintiffs or defendants, provide the information in the same format as above on a separate page.

## LITIGATION HISTORY

A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?        Yes ☐        No ☑

If yes, please describe _____

B. Have you brought any other lawsuits in state or federal court while incarcerated?

Yes ☐        No ☑

C. If your answer to B is yes, how many? __0__ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to previous lawsuit:

Plaintiff(s) N/A

Defendant(s) N/A

2. Court (if federal court, give name of district; if state court, give name of county)

N/A

3. Docket Number/Judge N/A

4. Basic claim made N/A

5. Disposition (That is, how did the case end. Was the case dismissed? Was it appealed? Is it still pending?) N/A

6. Approximate date of filing of lawsuit N/A

7. Approximate date of disposition N/A

For additional cases, provide the above information in the same format on a separate page.


## EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. Is there a grievance procedure available at your institution? Yes ☑ No ☐

B. Have you filed a grievance concerning the facts relating to this complaint? Yes ☑ No ☐

If your answer is no, explain why not _____

_____

C. Is the grievance process completed? Yes ☑ No ☐

*PLEASE NOTE: THE PRISON LITIGATION REFORM ACT BARS ANY INCARCERATED PERSON FROM BRINGING SUIT CONCERNING THE CONDITIONS OF HIS CONFINEMENT UNLESS AND UNTIL HE HAS EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES. PLEASE ATTACH COPIES OF MATERIALS RELATING TO YOUR GRIEVANCE.*

## STATEMENT OF CLAIM

Place of the occurrence Taylorville Correctional Center

Date of the occurrence Various dates from 12 April 2016 to 25 April 2016

Witnesses to the occurrence None other than Defendants

*State here briefly the FACTS that support your case. Describe how EACH defendant is involved.*
*Do not give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph. Unrelated claims*
*should be raised in a separate civil action.*
      *THE COURT STRONGLY URGES THAT YOU USE ONLY THE SPACE PROVIDED.*

See enclosed suit.

## Count I

- 42 U.S.C. § 1983 – Denial of Medical Care
- Eighth Amendment

- All Defendants

1) Plaintiff, Joseph A. Carter, was denied proper medical care by Defendants, a right guaranteed by the Eighth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

2) Plaintiff sought relief through the institutions nurse-sick-call line several times from 12 April, 2016 to 25 April, 2016 for extreme pain in his right foot where finally, Defendant, Abdur Nawoor refused to refer Mr. Carter for surgery at an outside facility and instead, prescribed Tylenol for a maximum of three months even though Mr. Carter's pain was, and still is, extreme, causing him great suffering and extreme mental anguish.

3) The Defendants acted with deliberate indifference and wanton disregard for Plaintiff's medical well being. With total knowledge of his condition and symptoms, the Defendants failed to provide proper medical care to the Plaintiff. Thus, their conduct fell short of the constitutional standards of proper healthcare, resulting in continuous pain and suffering as well as extreme

mental anguish due to loss of sleep.

## Allegations

4) Plaintiff incorporates each paragraph of this complaint as if fully restated here.

5) On or about 20 February, 2016, Plaintiff, Joseph A. Carter began experiencing pain in his right foot. Over the next week, the pain increased in both severity and frequency. Plaintiff then noticed an abnormal knot on the left side of his great toe. Plaintiff waited to see if knot and pain would go away. When it did not; when the pain grew worse, he sent a request slip to healthcare.

6) On 12 April, 2016, Plaintiff went to healthcare and was seen by Defendant, Pat Smith RN. Nurse Smith examined Mr. Carter and determined that he was suffering from a "bunion to medial side" [Attachment 1] A second un-named nurse was called in for a second opinion. When asked what his pain level was, Mr. Carter indicated that it was an 8 out of 10. [Attachment 1]

7) On 15 April, 2016, Plaintiff returned to healthcare

2

exibiting the same symptoms. On this visit, Defendant, Cathy Craig RN saw Mr. Carter. As noted in [Attachment 2], Plaintiff was informed that he had a "medial aspect bunion" and there was a "very pronounced grimmace when touched". In addition, the toenail was red and the great toe was puffy at its' base. Plaintiff again indicated that his pain level was an 8 out of 10. Nurse Craig stated that it appeared as if there was a fluid build-up and that it could be drained. This procedure was not done at any time. She then said that she would push Mr. Carter through to see the doctor instead of requiring him to go through sick-call a third time.

8) On 18 April, 2016, Plaintiff was seen by Defendant, Dr. Nawoor, for the same issue. Dr. Nawoor indicated that it is the toe growing out of the side of the foot and that it can only be remedied with surgery. He also mentioned that it is caused by wearing the cheap kinds of shoes available at Taylorville C.C. Plaintiff asked to have the surgery to take care of the problem. Dr. Nawoor asked Mr. Carter how much time he had left. Mr. Carter indicated that he had just under a year. To this, Dr. Nawoor told Mr. Carter that he would have to wait until he got out. Mr. Carter expressed that he was in pain now and would like to take care of it now. Dr. Nawoor

3

explained that he was unable to perform the surgery at Taylorville. He then prescribed three months worth of Tylenol for pain.

9) On 25 April, 2016, Plaintiff was again seen by Defendant, Dr. Nawoor for the same issue. Dr. Nawoor, this time, explained that it was a bunion and that Plaintiff would have to wait until he was released over a year later to have the surgery and thus relieve the pain.

10) During the aforementioned visit, Plaintiff also met with Defendant, Kathy Galvin, the healthcare administrator at Taylorville C.C., and asked if there was anything she could do. Plaintiff explained that he was under the care and supervision of I.D.O.C. and thus it was the responsibility of the healthcare facility to tend to his medical needs.

11) On 27 April, 2016, Plaintiff received a "Medical Special Service Referral Denial or Revision form DOC ø255 in the mail. [Attachment 4] This form stated that Defendants Nawoor and Ritz had discussed the option of sending Mr. Carter to a podiatrist, but had instead decided to continue "onsite conservative management" and that patient would have to wait for a year in pain

4



before he could "seek further treatment options upon release".

12) On or around 18 July, 2016, the prescription for Tylenol ended and a renewal was denied.

13) On 17 October, 2016, Plaintiff filed a grievance against the healthcare facility for pain and suffering and reimbursement of co-pays.

14) On 16 November, 2016, Plaintiff received grievance response claiming "no merit" and only addressed the co-pay reimbursment.

15) On 25 January, 2017, Plaintiff sent grievance to the Administrative Review Board.

16) On 2 February, 2017, Plaintiff received grievance response from the Administrative Review Board with a claim that "Offender did not follow DR 504.810 procedure, no grievance officer response". It should be noted that Plaintiff had no control over whether or not the grievance is routed to the grievance officer.

17) Plaintiff has, since 20 February, 2016, well over a year, been forced to deal with constant pain while

5

working six hours per day, five days per week on his feet. Mr. Carter was then forced to try to sleep each night with an intense throbbing pain, many nights falling short of a mere four hours of sleep, causing extreme mental anguish.

## Defendants

18) The defendants are as follows:

1) Wexford Health Services, Inc. (Wexford) is a corporation headquartered in Pennsylvania transacting business in Illinois, is a healthcare provider for I.D.O.C. At all times relevant to the events at issue in this case, Wexford was responsible for the implimentation, oversight, and supervision of policies and practices at Taylorville Correctional Center and the I.D.O.C. generally. As an agent of the I.D.O.C., Wexford was at all times relevant to this case acting under the color of state law by and through its' agents, including the individual defendants and other unknown healthcare employees at Taylorville C.C.

2) At all times relevant to her involvement in this case, Defendant, Kimberly Smith, was warden at Taylorville C.C., an employee of I.D.O.C., and was responsible for the implimentation, oversight, and supervision of policies and practices at Taylorville C.C. Defendant is being sued in her individual capacity and was acting under color of state law and within the scope of her employment relationship with Wexford.

3) At all times relevant to his involvement in this case, Defendant, Dr. Abdur Nawoor, was a physician at Taylorville C.C., an employee of and final policy maker for Wexford, and was responsible for the implimentation, oversight, and supervision of policies and procedures at Taylorville C.C. Defendant, Dr. Abdur Nawoor, is being sued here in his individual capacity acting under color of state law and within the scope of his employment with Wexford.

4) At all times relevant to his involvement in this case, Defendant, Dr. Ritz, was a physician at Wexford and an employee and final policy maker at Wexford, and was responsible for the implimentation, oversight, and supervision of policies and procedures at Wexford. Defendant, Dr. Ritz, is being sued here in his individual capacity acting under color of state law and within the scope of his employment with Wexford.

5) At all times relevant to her involvement in this case, Defendant, Kathy Galvin, was the healthcare administrator and was an employee of and final policy maker for Wexford, and was responsible for the implimentation, oversight, and supervision of policies and procedures at Taylorville C.C. Defendant, Kathy Galvin, is being sued here in her individual capacity acting under color of state law and within the scope of her employment with Wexford.

6) At all times relevant to their involvement in this case, Defendants, Pat Smith, Cathy Craig, Randy Emerson, and other un-named nurses were all registered nurses at Taylorville C.C. and employees of Wexford. The named defendants are being sued in his/her individual capacity. At all times relevant in this case, defendants were acting under color of state law and within the scope of their employment with Wexford.

19)     All Defendant's named above had direct contact with the Plaintiff, had knowledge of Plaintiff's condition, and/or had a duty to perform to prevent the conditions that led to the Plaintiff's pain and suffering and mental anguish.

20) As described more fully above, Defendants had notice of Mr. Carter's medical needs and the seriousness of his medical needs, and knew the risk of harm if he did not receive appropriate medical care. Despite this knowledge, Defendants failed to provide him with any proper medical care in violation of the Eighth Amendment of the U.S. Constitution.

21) As a result of Defendants' unjustified and unconstitutional conduct, Mr. Carter's pain increased in intensity and continued in duration thus causing him to experience great pain and suffering and severe mental anguish due to loss of sleep.

22) The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice and/or wreckless indifference to Plaintiff's constitutional rights.

23) Alternatively, Defendants were deliberately indifferent to Mr. Carter's objectively serious medical needs and their actions were undertaken intentionally, with malice and/or wreckless indifference to Mr. Carter's constitutional rights.

24) Mr. Carter's injuries were proximately caused by policies and practices of Defendants.

25) Prior to the events giving rise to Plaintiff's case, Defendant, Wexford, had notice of widespread policies and practices by healthcare and correctional employees in I.D.O.C. pursuant to which prisoners like Mr. Carter with serious medical needs were routinely denied medical care and access to medical care. Despite knowledge of these problematic policies and practices, defendant, Wexford, did nothing to ensure that prisoners in I.D.O.C. received adequate medical care and access to medical care, thereby acting with deliberate indifference.

26) Specifically, there exists widespread policies and practices at Taylorville C.C. pursuant to which prisoners receive unconstitutionally inadequate healthcare including: 1) Healthcare staff commonly fail to provide adequate healthcare to prisoners with a serious medical condition. 2) Healthcare personnel commonly fail to perform adequate examinations of prisoners with serious medical conditions. 3) Healthcare personnel commonly fail to send prisoners to outside facilities when unable to perform examinations or other procedures due to lack of qualifications or medical equipment. 4) Healthcare personnel with inadequate training, qualifications, and experience are charged with the responsibility of screening and evaluating prisoner's complaints and requests for medical care.

5) Healthcare staff make treatment decisions based on cost, even when those treatment decisions are adverse to the patients health.

27) These widespread policies and practices are allowed to flourish because Defendant, Wexford, which directs the provisions of healthcare services at Taylorville C.C., directly encourages the very type of misconduct at issue in this case, failed to adequately punish and/or discipline instances of similar conduct and failed to provide adequate training and supervision of healthcare correctional employees. In this way, Defendant, Wexford, violated Mr. Carters constitutional rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

## Count II

- 42 U.S.C. § 1983 – Failure to Intervene
- Eighth Amendment

- All Defendants

28) Plaintiff incorporates each paragraph of this complaint as if fully restated here.

29) As described more fully above, defendants had reasonable opportunity to prevent the violation of Mr. Carter's constitutional rights as set forth above had they been inclined but failed to do so.

30) Defendants' failure to act was intentional, done with malice, and/or done with wreckless indifference to Mr. Carter's constitutional rights.

31) As a direct result of Defendants' misconduct, Mr. Carter's constitutional rights were violated and Plaintiff suffered injuries, severe prolonged pain, extreme suffering, emotional distress and loss of sleep.

## Count III

- 735 ILCS 5/2-622 - Medical Malpractice

- Defendants: Wexford, Dr. Nawoor, Dr. Ritz

32) Defendant, Dr. Nawoor, failed to adequately diagnose Mr. Carter's condition. The first visit with Dr. Nawoor he was told that it was the toe growing out of the side of his foot. On the second visit, he was told it was a bunion. Dr. Nawoor took no x rays to confirm either of his conclusions, only saying that Mr. Carter needed surgery but could not perform that surgery at Taylorville and, along with Defendant, Dr. Ritz, refusing to send Mr. Carter to an outside facility for proper diagnosis and treatment.

33) Defendants were negligent in their diagnosis and failed to provide necessary and/or proper treatment.

34) Defendants have a duty and responsibility to provide adequate care and treatment for all inmates or, if ill-equipped, send inmate to an outside facility where he can receive adequate care. Defendants conduct fell short of the Constitutional standard resulting in severe pain and suffering and extreme emotional distress due to loss of sleep.

14

35) As a direct result of Defendants' negligence, Plaintiff suffered severe pain and suffering and extreme mental anguish due to loss of sleep.

36) In the manner described more fully above, in rendering medical care to Mr. Carter, Defendants, Dr. Nawoor, Dr. Ritz and Wexford had a duty to perform and apply the skill and care of reasonably well-qualified medical personnel in the same and similar circumstances or send Plaintiff to an outside facility which could provide such care.

37) Defendants, in degradation of their aforementioned duty, were negligent in their provision of medical care to Plaintiff. Plaintiff's injuries were sustained and worsened as a direct and proximate result of one or more of the negligent acts/or omissions of Defendants.

38) As a direct and proximate result of Defendants' medical malpractice, Mr. Carter suffered injuries including pain, suffering, mental anguish and loss of sleep.

## Count IV

- Respondeat Superior

- Defendant: Wexford

39) On information and belief in committing the acts alleged in the preceeding paragraphs, Defendants, Dr. Nawoor, Dr. Ritz, Kathy Galvin RN, Pat Smith RN, Randy Emerson RN, and other to be named nurses were employees, members and agents of Wexford acting at all times within the scope of their employment and under color of state law.

40) Consequently, Defendant, Wexford, is liable for the actions of its' employees acting within the scope of their employment under state law,

41) Wexford, the Defendant, as a private corporation acting under color of state law, should additionally be held liable under 42 U.S.C. § 1983 for the conduct of its employees acting within the scope of their employment. [Shields v. Dept. of Corr., 746 F. 3d 782, 793-95 (7th Cir. 2014)]

## CONCLUSION

42) WHEREFORE, Plaintiff, Joseph A. Carter respectfully requests that this court enter a judgement granting Plaintiff:

43) A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States;

44) Compensatory damages in an amount later to be determined against each Defendant, jointly and severally;

45) Punative damages in an amount later to be determined against each defendant;

46) A trial by jury on all issues triable by jury;

47) Plaintiff's costs in this suit;

48) Any additional relief this court deems just, proper, and equitable.

Respectfully submitted,

Joseph A. Carter

By: Joseph A. Carter
    Plaintiff pro-se


Joseph A. Carter  $10130
P.O. Box 1000
Taylorville, IL 62568



## VERIFICATION

I have read the foregoing complaint and hereby
verify that the matters alleged therein are true, except
as to matters alleged on information and belief, and, as
to those, I believe them to be true. I certify under
penalty of perjury that the foregoing is true and
correct.

Executed at Taylorville, Illinois on 10 April, 2017

Joseph A. Carter

Joseph A. Carter